<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

**GOLDEN STATE MEDICAL SUPPLY INC.,**

    *Plaintiff*,

    v.

**AUSTARPHARMA LLC, et al.,**

    *Defendants*.

---

**Civil Action No. 21-17137**

**OPINION**

---

ARLEO, UNITED STATES DISTRICT JUDGE

**THIS MATTER** comes before the Court on Defendants AustarPharma LLC's ("AP LLC"), AustarPharma Research, LLC's ("AP Research"), AustarPharma Laboratories, LLC's ("AP Labs"), and Rong Liu's ("Liu" and together with AP LLC, AP Research, and AP Labs, the "AP Defendants") Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(5) and 12(b)(6) and to Strike pursuant Federal Rule of Civil Procedure 12(f), ECF No. 29.  Plaintiff Golden State Medical Supply Inc. ("GSMS" or "Plaintiff") opposes the Motion.  ECF No. 35.  For the reasons explained below, the Motion is **GRANTED in part** and **DENIED in part**.

I.    FACTUAL BACKGROUND[1]

    This action arises out of a deteriorating business relationship between AP LLC, a generic pharmaceutical manufacturer, and Plaintiff, a distributor.  See generally Compl.

---

[1] These facts are drawn from the Complaint, ECF No. 1, documents integral to or relied upon by the Complaint, and the public record.  See In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

Plaintiff and AP LLC were parties to a Product Supply Agreement dated February 19, 2014, which provided that Plaintiff would periodically order, and AP LLC would timely deliver, stocks of certain drugs referred to in the Complaint as "Product M" and "Product S."[2]  Id. ¶¶ 79-80; see also Certification of Paul H. Aloe ("Aloe Cert.") Ex. A (the "First Supply Agreement"), ECF No. 29.2.[3]  Plaintiff, in turn, contracted to resell the drugs received from AP LLC to purchasers including the United States Government.  Id. ¶¶ 86, 99.

On September 23, 2019, the Government contacted Plaintiff to renegotiate the price at which it purchased Product S from Plaintiff.  Id. ¶ 104.  Plaintiff thereafter advised AP LLC that it could not resell its on-hand inventory of Product S that it had purchased from AP LLC in 2019 "due to the pricing in the Government market having dropped dramatically and unexpectedly."  Aloe Cert. Ex. B, at 1, ECF No. 29.3.  Plaintiff requested a price reduction for Product S tablets from AP LLC, including a "shelf stock adjustment for all on hand inventory of [Product S] Tablets at GSMS."  Id.

AP LLC and Plaintiff subsequently entered into two letter agreements on March 6, 2020, wherein AP LLC agreed to provide a credit memo to GSMS in the amount of $3,819.053.37, representing a discount for Plaintiff's on-hand inventory of Product S (the "Purchase Credit").  Id. ¶¶ 108-09; see also Aloe Cert. Exs. B-D (the "Credit Agreements").  Under the terms of the Credit Agreements, AP LLC would offset future invoices issued to Plaintiff with the Purchase Credit in installments, based on sales and an agreed upon credit usage schedule, until the Purchase Credit was fully recouped.  Aloe Cert. Ex. B, at 1.  The Credit Agreements projected a "full recoupment"

---

[2] "Product S" was added to the supply agreement in June 2019.  Compl. ¶ 97.

[3] The First Supply Agreement, as well as the other agreements between the parties discussed below, are expressly relied upon by the Complaint and may be considered on a motion to dismiss.

of the Purchase Credit by September 2021 but provided that a variety of factors could impact this timeline.  Id.  The parties further agreed to meet in September 2020 and May 2021 to "conduct a business review" and "to use best efforts to adjust the credit schedule, as necessary, in a good faith effort to timely complete full recoupment of the [Purchase] Credit."  Aloe Cert. Ex. D.  On May 5, 2020, Plaintiff and AP LLC entered into a new Supply Agreement, which specifically incorporated the terms of the Credit Agreements.  Compl. ¶ 113; see also Aloe Cert. Ex. E (the "Second Supply Agreement", and together with the First Supply Agreement, the "Supply Agreements").

The Complaint alleges that since 2019, AP LLC has consistently breached its obligations to supply Products M and S in full and on time, which has rendered Plaintiff unable to satisfy its obligations to resell the drugs to its customers.  See, e.g., Compl. ¶¶ 81-84, 98, 111.  At the same time, AP LLC allegedly sold Products M and S to third parties, including a direct competitor of GSMS, instead of fulfilling its obligations under the Supply Agreements.  Id. ¶¶ 127-28.  The Complaint further alleges that regulations governing Plaintiff's government re-sale contracts made it difficult for Plaintiff to switch to a new provider of Products M and S, a fact which AP LLC used to "stranglehold[] GSMS into continuing to do business with [it]."  Id. ¶ 88.

From November 2020 to March 2021, the parties held four meetings "over interstate wire communications" to discuss Plaintiff's grievances concerning the Supply Agreements and Purchase Credit.  First, on November 10, 2020, Plaintiff told AP LLC that it was not complying with the Supply Agreements, and AP LLC "told [Plaintiff] that it would try to produce Product S per the contracts."  Id. ¶ 113.  Second, on November 24, 2020, AP LLC told Plaintiff "that it would investigate how to make sales of other products to other non-GSMS customers to pay" the Purchase Credit, while Liu "promised to secure bank loans or other notes to pay [Plaintiff] back."

3

Id. ¶ 114.  Third, on December 8, 2020, Plaintiff requested AP LLC's audited financial statements,

but AP LLC "hesitated on committing to provide" the statements.  Id.  Fourth, on March 30, 2021,

Liu cited the COVID-19 pandemic as a basis for AP LLC's supply problems and stated that AP

LLC was not being sued by a third party.  Id. ¶ 117.  AP LLC also stated that "it was running extra

shifts on weekdays and weekends to catch up."  Id.  Plaintiff generally alleges that some of the

statements made by AP LLC and Liu during the aforementioned meetings were false and intended

to "dupe GSMS into accepting new delivery schedules of Product S," induce Plaintiff into

submitting new orders, and "forestall payment" of the Purchase Credit, all while AP LLC knew it

could not produce or timely deliver the products.  See, e.g., id. ¶¶ 113, 126.

Finally, Plaintiff asserts that AP LLC and Liu acted in concert with the other Defendants:

AP Labs, AP Research, Austar International Limited ("AIL"), and Bostal Drug Delivery Co., Ltd.

("Bostal"[4] and together with AIL and the AP Defendants, "Defendants").[5]  See, e.g., id. ¶ 124.  As

alleged in the Complaint, Liu is the majority owner of AP LLC and owns Bostal, AP Research,

and AP Labs, while AIL has a minority stake in AP LLC.  Id. ¶¶ 25-26, 124.  Plaintiff alleges that

during the period that AP LLC was breaching its obligations to Plaintiff, AIL filed a lawsuit against

Liu, AP LLC, and Bostal asserting various derivative and direct claims arising from allegations

that Liu misappropriated AP LLC's assets and operated Bostal as a competing company in China

(the "AIL v. AP Action").  Id. ¶ 27; see also Austar Int'l Ltd. v. AustarPharma LLC, 425 F. Supp.

3d 336 (D.N.J. 2019).  Though the AIL v. AP Action concerns a now-settled internal corporate

---

[4] The Complaint names Bostal and Guangzhou Bristol Drug Delivery Co., Ltd. ("Bristol") as two distinct parties in the caption but later explains that the entity previously named "Guangzhou Bristol Drug Delivery Co., Ltd." was renamed "Bostal Drug Delivery Co., Ltd."  Compl. ¶ 10.  The Court therefore understands Bristol and Bostal to be the same entity.

[5] Plaintiff also initially named LSQ Funding Group L.C. ("LSQ") as a defendant.  Plaintiff voluntarily dismissed its claims against LSQ with prejudice on November 8, 2021.  ECF No. 26.

dispute that ostensibly bears no relationship to GSMS, Plaintiff alleges that AIL conspired with AP LLC to defraud GSMS so that AP LLC would have sufficient assets to "satisfy any judgment in favor of [AIL] against [AP LLC]." Compl. ¶¶ 115-23.

## II.  PROCEDURAL HISTORY

Plaintiff initiated this action on September 17, 2021 by filing an eleven-count Complaint alleging (1) breach of contract against AP LLC ("Count I"); (2) promissory estoppel against AP LLC, Liu, and AIL ("Count II"); (3) fraud against all Defendants ("Count III"); (4) fraudulent inducement against all Defendants ("Count IV"); (5) unjust enrichment against all Defendants ("Count V"); (6) breach of the implied covenant of good faith and fair dealing against AP LLC ("Count VI"); (7) violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962, et seq. ("RICO") and its New Jersey state analogue, N.J.S.A. § 2C:41-1, et seq. ("NJRICO"), against all Defendants ("Count VII"); (8) civil conspiracy against all Defendants ("Count VIII"); (9) conversion against all Defendants ("Count IX"); (10) tortious interference with a contract against all Defendants except AP LLC ("Count X"); and (11) declaratory judgment against AP LLC ("Count XI"). Id. ¶¶ 131-232.

On October 26, 2021, Plaintiff filed affidavits of service indicating that AP LLC, AP Research, and AP Labs were served on September 24, 2021 at AP LLC's address in Edison, New Jersey, by leaving a copy of the Summons and Complaint with an unidentified secretary at the front desk. ECF Nos. 11-13. Plaintiff attempted to serve Liu by leaving a copy of the Summons and Complaint at the law firm of Liu's attorney. See ECF No. 34

The AP Defendants now move to (1) dismiss the Complaint as to Liu, AP Research, and AP Labs for improper service; (2) dismiss Counts II-XI of the Complaint for failure to state a claim

upon which relief may be granted; and (3) strike all allegations in the Complaint related to the AIL v. AP Action as irrelevant and prejudicial.  ECF No. 29.

### III.   LEGAL STANDARD

Rule 12(b)(5) permits the Court to dismiss a complaint without prejudice due to insufficient service of process.  See Umbenhauer v. Woog, 969 F.2d 25, 30 n.6 (3d Cir. 1992).  The Court may also, in lieu of dismissal, order the plaintiff to effect proper service.  Moses v. Amazon.com.dedc LLC, No. 16-8675, 2019 WL 7293590, at *3 (D.N.J. Dec. 30, 2019).  "[T]he party asserting the validity of service bears the burden of proof on that issue."  Grand Entm't Grp., Ltd. v. Star Media Sales, Inc., 988 F.2d 476, 488 (3d Cir. 1993).

In resolving a Rule 12(b)(6) motion to dismiss, the Court accepts all pleaded facts as true, construes the complaint in the plaintiff's favor, and determines "whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation marks and citation omitted).  To survive, the claims must be facially plausible, meaning that the pleaded facts "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  The allegations must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

Rule 12(f) grants the Court discretion to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Motions to strike are "highly disfavored."  S.J. by Jones v. Avanti Prod. LLC, No. 18-15003, 2019 WL 943521, at *1 (D.N.J. Feb. 26, 2019) (citations omitted).  A Rule 12(f) motion "usually will be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the

parties, or if the allegations confuse the issues in the case."  Burke v. Weight Watchers Int'l, Inc.,

983 F. Supp. 2d 478, 484 (D.N.J. 2013) (citation omitted).

## IV.   DISCUSSION

The AP Defendants ask this Court to dismiss all claims asserted against AP Labs, AP,

Research, and Liu for improper service and contend that all claims except Count I, which is

asserted solely against AP LLC, fail to state a viable claim for relief.  The Court addresses each

argument in turn.

### A.   Service of the Complaint

The AP Defendants have waived service with respect to AP LLC but contend that Plaintiff

has failed to demonstrate proper service upon AP Labs, AP Research, or Liu.  The Court agrees.

With respect to AP Labs and AP Research, an initial attempt at service upon an

unincorporated association located in New Jersey must be made by delivering a copy of the

Summons and Complaint to an officer, managing agent, or other agent authorized to receive

service of process.  See Fed. R. Civ. P. 4(e)(1), (h)(1); N.J. Ct. R. 4:4-4(a)(5).[6]  Plaintiff attempted

to serve AP Labs and AP Research by leaving a copy of the Summons and Complaint with an

unnamed secretary at AP LLC's business address.  However, Plaintiff has submitted no evidence

to suggest that the secretary was authorized to accept service on behalf of AP Labs or AP Research.

Moreover, while New Jersey Court Rules permit substituted service upon an LLC's principal place

of business by regular and certified mail when personal service cannot be made "despite diligent

effort," N.J. Ct. R. 4:4-4(b)(1)(C), Plaintiff concedes that it "did not try to mail the complaint" to

---

[6] Rule 4(e)(1) permits service by any means authorized by New Jersey law.

these AP Defendants, Pl. Opp. at 34.  Consequently, Plaintiff has failed to carry his burden to prove proper service upon AP Labs or AP Research.

With respect to Liu, Plaintiff attempted service by leaving a copy of the Summons and Complaint with Liu's attorney.  See ECF No. 34.  Plaintiff argues that such service was proper because Liu has been in China since June 2021 and "has no indication of ever coming back."  Pl. Opp. at 32.  The Court disagrees that this alone is sufficient to demonstrate proper service.

To the extent Liu cannot be served in the United States, a court may authorize alternative service of process upon a foreign defendant only if (1) "there is no international agreement prohibiting service by the proposed method" and (2) "the proposed method of service is reasonably calculated to provide the defendant with notice."  McGillvary v. Holom, No. 18-17487, 2019 WL 2124509, at *1 (D.N.J. May 15, 2019).  Where a foreign county has agreed to the Hague Convention,[7] "any other means of service employed by a plaintiff would constitute means prohibited by international agreement," unless service via the Hague Convention would be futile. Sec. & Exch. Comm'n v. Dubovoy, No. 15-6076, 2016 WL 7217607, at *2 (D.N.J. Dec. 13, 2016). China is a signatory to the Hague Convention, and "service can be effected in China through the Chinese Central Authority."  RJ Brands, LLC v. Hangdong Trading Ltd., No. 21-4747, 2021 WL 3206813, at *3 (D.N.J. July 28, 2021) (citation omitted).  Before a court may authorize alternative service upon a foreign defendant living in a signatory state, the plaintiff must first make a "good faith effort" to comply with the Hague Convention.  See generally id. at *3-5.  Plaintiff does not suggest it has done so here.[8]

---

[7] See Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters.  20 U.S.T. 361.

[8] Of course, nothing in this Opinion prevents Plaintiff from seeking alternative service from the Magistrate Judge upon a showing that traditional means of service were unsuccessful or would be futile.

Having found service upon AP Labs, AP Research, and Liu insufficient, the Court must decide whether to dismiss the Complaint without prejudice as to those Defendants or permit additional time to perfect service.  As discussed below, the Court also concludes that the Complaint fails to state a claim upon which relief may be granted against AP Labs, AP Research, or Liu, rendering service futile.  The Court will consequently dismiss the Complaint without prejudice.

### B.      Adequacy of the Complaint

The AP Defendants next argue that Counts II-XI of the Complaint fail to state a claim upon which relief may be granted.  The Court agrees.

### 1.      Contractual and Quasi Contractual Claims

Count I of the Complaint, which the AP Defendants do not claim is deficient, asserts that (1) AP LLC beached the Supply Agreements by failing to timely deliver drugs ordered by Plaintiff and (2) those contracts permit Plaintiff to assess "service level" and "failure to supply" penalties against AP LLC.  Compl. ¶¶ 135-36, 139.[9]  The AP Defendants agree that the Supply Agreements are valid contracts and contend that Plaintiff's parallel claims for promissory estoppel, unjust enrichment, breach of the covenant of good faith and fair dealing, and declaratory judgment must be dismissed as duplicative of Count I.  The Court agrees that Counts II, V, VI, and XI fail to set forth claims that are independent of Plaintiff's claim for breach of contract.

### a.  Promissory Estoppel (Count II) and Unjust Enrichment (Count V)

Under New Jersey law, "unjust enrichment and promissory estoppel [are] quasi-contract theories that are unavailable when a valid contract exists."  Hillsborough Rare Coins, LLC v. ADT LLC, No. 16-916, 2017 WL 1731695, at *6 (D.N.J. May 2, 2017).  Such claims are subject to

---

[9] Count I also alleges that Plaintiff "has not been paid the purchase credit it is indisputably owed" but does not clearly articulate how or if AP LLC breached the terms of the Credit Agreements.  Compl. ¶¶ 138-39.

dismissal to the extent they arise from "an implied promise concerning the same subject matter" as an indisputably valid contract. Ribble Co., Inc v. Burkert Fluid Control Sys., No. 15-6173, 2016 WL 6886869, at *5 (D.N.J. Nov. 22, 2016); see also Zydus Worldwide DMCC v. Teva API Inc., 461 F. Supp. 3d 119, 140-41 (D.N.J. 2020) ("[L]iability based on quasi-contractual principles cannot be imposed if an express contract exists concerning the identical matter.").

To state a claim for promissory estoppel, a plaintiff must allege (1) a "clear and definite promise"; (2) that the promisor expected the promise to induce reliance; (3) reasonable reliance on the promise; and (4) that the promisee's reliance was "substantial." Read v. Profeta, 397 F. Supp. 3d 597, 629 (D.N.J. 2019) (citations omitted).  "A broad or vague implied promise will not suffice." Id. (citation omitted).

Count II alleges that Liu, AP LLC, and AIL made "clear and definite promises relating to fulfilling orders of Product M and Product S" and promised "that [AP LLC] would comply with the order requirements [and] deliver the required amounts by the required timelines." Compl. ¶ 142.[10]  AP LLC's responsibilities with respect to delivering Products M and S are governed by express contracts—the Supply and Credit Agreements—and cannot be enlarged through an implied promise concerning the same subject matter.[11]  As Plaintiff has not clearly identified an extrinsic promise upon which it relied, the Court dismisses Count II without prejudice.

A plaintiff alleging unjust enrichment must plead facts showing that "(1) at plaintiff's expense (2) defendant received [a] benefit (3) under circumstances that would make it unjust for

---

[10] To the extent Plaintiff is attempting to assert a claim for promissory estoppel arising from Liu's alleged promise to "pay back" the Purchase Credit, Compl. ¶ 114, the parties' obligations with respect to the Purchase Credit are set forth in the Credit Agreement and Second Supply Agreement, id. ¶¶ 105-09, 113.

[11] Plaintiff's allegations of promises "related to" order fulfillment are also too broad and vague to satisfy the requirement of a "clear and definite" promise. See Read, 397 F. Supp. 3d at 629.  Any amended pleading asserting a promissory estoppel claim must identify a specific promise extrinsic to the contracts upon which Plaintiff relied and the manner in which such reliance exceeded its alleged contractual injuries.

defendant to retain [the] benefit without paying for it."  Maniscalco v. Brother Int'l Corp. (USA), 627 F. Supp. 2d 494, 505 (D.N.J. 2009).  The plaintiff must also allege a "direct relationship" between the parties, such that the plaintiff "directly conferred" the alleged benefit upon the plaintiff.  Id. at 506.

Count V alleges that the AP Defendants were enriched in three ways: (1) AP LLC agreed to the Purchase Credit in the Credit Agreement, instead of paying Plaintiff a lump sum price reduction for Plaintiff's on-hand inventory of Product S, Compl. ¶ 166; (2) Defendants have not paid the "service level penalties" and "failure to supply penalties" required by the Supply Agreements, id.; and (3) Defendants have been "enriched" to the extent AP LLC failed to perform under the Supply Agreements, id. ¶ 168.  Each species of enrichment arises directly from the Credit and Supply Agreements and cannot sustain an independent claim for unjust enrichment.

Plaintiff does not dispute that Count V is duplicative with respect to AP LLC—the sole Defendant bound by the contracts—but argues that it may proceed to the extent it alleges that Liu and other Defendants in AP LLC's corporate family benefited from AP LLC's breach of contract. This argument is unavailing because, among other things, the Complaint does not plausibly allege that Plaintiff conferred any direct benefit on these Defendants.  The Court therefore dismisses Count V without prejudice.

### b.   Breach of the Covenant of Good Faith and Fair Dealing (Count VI)

To allege a claim for breach of the implied covenant of good faith and fair dealing, a plaintiff must allege "(1) a contract exists between the plaintiff and the defendant; (2) the plaintiff performed under the terms of the contract [unless excused]; (3) the defendant engaged in conduct, apart from its contractual obligations, without good faith and for the purpose of depriving the plaintiff of the rights and benefits under the contract; and (4) the defendant's conduct caused the

plaintiff to suffer injury, damage, loss or harm." <u>Creative Concepts Mfg. Ltd. v. Team Beans LLC</u>, No. 17-6066, 2018 WL 2002800, at *4 (D.N.J. Apr. 30, 2018).  Such a claim may not proceed "unless the underlying conduct is distinct from that alleged in a corresponding breach of contract claim." <u>MZL Cap. Holdings, Inc v. TD Bank, N.A.</u>, 734 F. App'x 101, 106 (3d Cir. 2018) (citing <u>Wade v. Kessler Inst.</u>, 172 N.J. 327 (2002)).  To allege conduct "apart from" express contractual obligations, the plaintiff must typically point to either a missing contractual term "necessary to fulfill the parties' expectations" or a misuse of contractual discretion.  <u>See, e.g.</u>, <u>Seidenberg v. Summit Bank</u>, 348 N.J. Super. 243, 260 (App. Div. 2002).

Count VI alleges that AP LLC violated the covenant of good faith and fair dealing because it "repeatedly violates the terms of the contract by failing to deliver required quantities at the required times" and "then makes repeated promises to comply with the contracts, but then again fails to deliver."  Compl. ¶ 173.  Plaintiff's breach of contract claim arises from the same alleged shortcomings in timely delivery, and Plaintiff has not identified a misuse of contractual discretion or any missing term in the Supply Agreements necessary to fulfill its expectations.[12]  The Count consequently dismisses Count VI without prejudice.

### c.    Declaratory Judgment (Count XI)

Count XI alleges that "[AP LLC] intends to file suit against GSMS to obtain full payment for Product M that GSMS received" and seeks a declaration that "if [AP LLC] owes more money to GSMS than any money that GSMS owes to [AP LLC] . . . GSMS is not required to pay any money to [AP LLC] until all of GSMS claims against [AP LLC] are fully adjudicated."  Compl.

---

[12] Like Plaintiff's breach of contact claim, Count VI alleges that "GSMS is indisputably owed the purchase credit amount" but does not explain how or if AP LLC breached the covenant of good faith and fair dealing implied in the Credit Agreements.  <u>See</u> Compl. ¶ 176; Pl. Opp. at 16-17.

¶¶ 221, 225.  Essentially, Plaintiff seeks an accounting of the sums due amongst the parties under the Supply Agreements.

Courts have discretion to dismiss claims for declaratory judgment that are duplicative of breach of contract claims, including where the plaintiff seeks declaratory relief simply to "resolve the parties' obligations under the applicable [contracts]."  AV Design Servs., LLC. v. Durant, No. 19-8688, 2021 WL 1186842, at *12-13 (D.N.J. Mar. 30, 2021) (citations omitted).  Here, the question of whether the amounts AP LLC owes under the contracts exceed the amounts owed by Plaintiff must necessarily be resolved in connection with Plaintiff's breach of contract claim.  See, e.g., VICI Racing, LLC v. T-Mobile USA, Inc., 763 F.3d 273, 294 (3d Cir. 2014) ("Plaintiff is only entitled to recover the net loss it has suffered because of Defendant's breach."); Munich Reinsurance Am., Inc. v. Am. Nat. Ins. Co., No. 09-6435, 2014 WL 2197050, at *7 (D.N.J. May 27, 2014), aff'd, 601 F. App'x 122 (3d Cir. 2015) (permitting insurer found liable to insured for unpaid claims to offset damages by the amount of outstanding premiums).  Plaintiff's requested declaration would serve no useful additional purpose, and so the Court dismisses Count XI as duplicative.[13]

### 2.    Fraud-Based Claims

The AP Defendants next argue that Plaintiff's claims for fraud, fraudulent inducement, RICO violations, and civil conspiracy are deficient because, among other things, the Complaint fails to plead them with particularity, as required by Federal Rule of Civil Procedure 9(b).  The Court agrees.

---

[13] The AP Defendants have also represented that AP LLC intends to file a counterclaim for breach of contract against Plaintiff.  See ProCentury Ins. Co. v. Harbor House Club Condo Ass'n, Inc., 652 F. Supp. 2d 552, 556 (D.N.J. 2009) (finding that claim seeking declaratory relief that a contract was not breached is duplicative of a counterclaim for breach of contract).

Rule 9(b) imposes a heightened pleading standard on claims that "sound in fraud." In re Suprema Specialties, Inc. Sec. Litig., 438 F.3d 256, 269 (3d Cir. 2006). RICO and common law conspiracy claims asserting a "conspiracy to defraud" are subject to Rule 9(b). See, e.g., Balthazar v. Atl. City Med. Ctr., 279 F. Supp. 2d 574, 590 (D.N.J. 2003), aff'd, 137 F. App'x 482 (3d Cir. 2005) (RICO); John Wiley & Sons, Inc. v. Rivadeneyra, 179 F. Supp. 3d 407, 411 (D.N.J. 2016) (civil conspiracy).

To satisfy Rule 9(b), "a party must state with particularity the circumstances constituting fraud," but "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). The allegations must be sufficient "to place the defendant on notice of the precise misconduct with which it is charged." Frederico v. Home Depot, 507 F.3d 188, 200 (3d Cir. 2007) (citations and alterations omitted). The plaintiff must therefore plead "the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." Id.

### a.       Fraud (Count III) and Fraudulent Inducement (Count IV)

Counts III and IV allege that Plaintiff relied upon misrepresentations of fact made by the AP Defendants regarding AP LLC's ability to timely deliver Products M and S and to otherwise perform under the parties' contracts. Compl. ¶¶ 150-53, 158-62.[14] The Court concludes that Plaintiff has failed to particularly plead any misrepresentations extrinsic to the contracts.

To state a claim for fraudulent misrepresentation, "a plaintiff must allege (1) a material misrepresentation of fact; (2) knowledge or belief by the defendant of its falsity; (3) intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting

---

[14] Though the Complaint alludes to the fact that Defendants failed to "tell[] GSMS that is could not fulfill the orders," it does not articulate a claim based on fraudulent omissions.

damage." Frederico, 507 F.3d at 200 (citing Gennari v. Weichert Co. Realtors, 148 N.J. 582 (1997)). Under New Jersey law, "claims for fraud in the performance of a contract . . . are not cognizable." Bracco Diagnostics, Inc. v. Bergen Brunswig Drug Co., 226 F. Supp. 2d 557, 564 (D.N.J. 2002). A fraud claim may proceed only where it asserts the breach of an extrinsic "duty beyond those imposed by the contracts alone," such as certain claims for fraud in the inducement. Network Commodities, LLC v. Golondrinas Trading Co., LTD., No. 11-3119, 2013 WL 1352234, at *9 (D.N.J. Apr. 1, 2013); see also Marina Dist. Dev. Co., LLC v. Jamil, No. 19-17180, 2020 WL 2744604, at *5 (D.N.J. May 27, 2020) ("[T]o falsely state that one intends to honor a promise is a misstatement of present fact and breaches a separate and extraneous duty not to commit fraud." (citation omitted)).

Apart from the promises in the Supply and Credit Agreements themselves, Plaintiff particularly pleads only three alleged misrepresentations. First, on November 24, 2020, Liu allegedly "promised to secure bank loans or other notes to pay GSMS back" for the Purchase Credit, even though AP LLC had no incentive to do so. Compl. ¶ 114. Second, on March 30, 2021, AP LLC "falsely told GSMS that it was running extra shifts on weekdays and weekends to catch up." Id. ¶ 117. Third, on March 30, 2021, Liu stated that AP LLC was not "being sued" by any third party, when in fact it was being sued by its landlord and AIL. Id.[15]

---

[15] The Complaint alleges several other statements attributed to Liu or AP LLC but does not state that they were false at the time that they were made. See e.g., Compl. ¶ 113 ("[AP LLC] told GSMS that it would try to produce Product S per the contracts."); id. ¶ 114 ("[AP LLC] told GSMS that it would investigate how to make sales of other products to other non-GSMS customers to pay GSMS back [for the Purchase Credit]"); id. ¶ 117 ("Liu . . . alluded to COVID as a basis for supply problems.").

Plaintiff also appears to allege that AP LLC misrepresented a material fact every time it accepted a purchase order pursuant to the Supply Agreements. Id. ¶¶ 150, 160. The Complaint is devoid of any factual detail concerning these purchase orders, and Plaintiff's vague suggestion that misrepresentations occurred falls well short of the particularity demanded by Rule 9(b). See, e.g., id. ¶ 144 ("Defendants continued to make multiple promises based on multiple purchase orders.").

Plaintiff has failed to plausibly allege a fraud claim based on these misrepresentations.  As an initial matter, AP LLC's representation that it "was running extra shifts to catch up" plainly relates to AP LLC's performance under the Supply Agreements and cannot sustain an independent fraud claim.  See Bracco, 226 F. Supp. 2d at 564.  While the subject matter of the remaining two alleged misstatements arguably falls outside the parties' contracts,[16] the Complaint fails to explain with particularity how, or if, Plaintiff reasonably relied on them to its detriment.  Beyond vague allusions to the facts that Plaintiff submitted additional purchase orders, Compl. ¶ 150, and that Defendants' statements "delayed GSMS's ability to obtain another trustworthy source of product," id. ¶ 145, the Complaint fails to allege a single thing Plaintiff would have done differently but for Defendants' statements.  By contrast, the Complaint repeatedly alleges that it could not easily find another source of Products M and S and felt forced to keep doing business with AP LLC.  See, e.g., id. ¶¶ 107, 114, 153, 162.

Plaintiff argues in opposition that it "relied on [Defendants'] fraudulent misrepresentations in entering into the [Credit Agreements and Second Supply Agreement]."  Pl. Opp. at 13.  Plaintiff, however, has not particularly alleged any misrepresentations predating those agreements.  The Complaint also fails to identify any specific promise in the contracts that was false "at the time of promising" because AP LLC "had no intention of fulfilling" it, nor has Plaintiff set forth any facts plausibly suggesting such fraudulent intent.  See Network Commodities, LLC, 2013 WL 1352234, at *9.

---

[16] Drawing reasonable inferences in Plaintiff's favor, the Court construes Liu's alleged promise that he would obtain a loan to "pay GSMS back" for the Purchase Credit as a statement extrinsic to the Credit Agreements.  In the Credit Agreements, AP LLC agreed to offset future invoices to Plaintiff with the Purchase Credit in installments, based upon sales.  See Aloe Cert. Ex. B, at 1.  Plaintiff, by contrast, appears to be alleging that Liu independently promised that he would secure financing to reimburse GSMS for the balance of the Purchase Credit.

The Complaint consequently fails to state a claim for fraud or fraudulent inducement. The Court dismisses Counts III and IV without prejudice.

### b.    RICO & NJRICO (Count VII)

Count VII alleges that the AP Defendants violated RICO and NJRICO through an enterprise designed "to defraud GSMS and breach the GSMS contracts" using misrepresentations of fact constituting mail and wire fraud. Compl. ¶¶ 178-82. Plaintiff has failed to plausibly allege such a claim.

To plead a RICO or NJRICO claim, "the plaintiff must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 362 (3d Cir. 2010) (quoting Lum v. Bank of Am., 361 F.3d 217, 223 (3d Cir. 2004)); see also N.V.E., Inc. v. Palmeroni, No. 06-5455, 2015 WL 13649814, at *9 (D.N.J. Feb. 23, 2015) ("New Jersey case law is in accord with Third Circuit RICO jurisprudence."). A civil plaintiff must also allege facts showing that the defendant's RICO violation caused an injury to its "business or property." Bridge v. Phoenix Bond & Indem. Co., 553 U.S. 639, 647 (2008) (citing 18 U.S.C. § 1964(c)); see also N.J.S.A. § 2C:41-4. Here, Plaintiff has failed to allege the requisite loss causation.[17]

While not fully clear from the Complaint, Plaintiff's opposition explains that Defendants engaged in a pattern of racketeering[18] consisting of "continued fraudulent misrepresentations" starting in March 2020 and continuing until 2021. Pl. Opp. at 22, 26. Plaintiff alleges that

---

[17] The Court need not determine whether Plaintiff has plausibly alleged the remaining elements necessary to support its RICO claims.

[18] A "pattern" of racketeering has three components: (1) two predicate acts of racketeering activity that occurred within ten years of each other; (2) a relatedness between the racketeering predicates; and (3) a past or threatened continuity of criminal activity. United States v. Bergrin, 650 F.3d 257, 266-67 (3d Cir. 2011) (citing H.J., Inc. v. Nw. Bell Tel. Co., 492 U.S. 229, 239 (1989) and 18 U.S.C. § 1961(5)).

Defendants' misrepresentations constituted mail and wire fraud, which are each predicate offenses under RICO.  See 18 U.S.C. § 1961(1).[19]  The essential elements of a claim for wire or mail fraud are "(1) the existence of a scheme to defraud; (2) the participation by the defendant in the particular scheme charged with the specific intent to defraud; and (3) the use of the United States mails [or wires] in furtherance of the fraudulent scheme."  United States v. Hannigan, 27 F.3d 890, 892 (3d Cir. 1994); see also 18 U.S.C. §§ 1341, 1343.  Where, as here, a RICO claim is "premised on mail or wire fraud" it "must be particularly scrutinized because of the relative ease with which a plaintiff may mold a RICO pattern from allegations that, upon closer scrutiny, do not support it."  Kolar v. Preferred Real Est. Invs., Inc., 361 F. App'x 354, 363 (3d Cir. 2010).

Plaintiff argues that it suffered two types of injuries resulting from Defendants' alleged fraud, which are each insufficient to sustain its RICO claims.  First, Plaintiff argues that Defendants failed to timely deliver Products M & S, and that as a result of AP LLC's "horrible performance record," Plaintiff incurred "failure to supply" penalties assessed by the United States Government.  Pl. Opp. at 19, 21.  In other words, Plaintiff complains of injuries resulting from AP LLC's alleged failure to perform under the Supply Agreements.

Like claims for fraud under New Jersey common law, for purposes of the federal mail and wire fraud statutes, a "[b]reach of contract is not fraud, and a series of broken promises therefore is not a pattern of fraud."  Arruda v. Curves Int'l, Inc., 861 F. App'x 831, 836 (5th Cir. 2021) (quoting Perlman v. Zell, 185 F.3d 850, 853 (7th Cir. 1999)); see also Sanchez v. Triple-S Mgmt.,

---

[19] In addition to mail and wire fraud, the Complaint alleges that Defendants violated 18 U.S.C. § 1349 and various state criminal provisions proscribing theft and deception.  Compl. ¶ 188.  18 U.S.C. § 1349 is not a predicate offense under RICO.  See 18 U.S.C. § 1961(1); McPeters v. Edwards, 806 F. Supp. 2d 978, 989 n.10 (S.D. Tex. 2011), aff'd, 464 F. App'x 351 (5th Cir. 2012).  Moreover, while violations of the identified state statutes may serve as predicates under NJRICO, Plaintiff has not explained how the state provisions were violated and does not contend that its NJRICO claim arises from facts distinct from those supporting its federal RICO claim.  The Court therefore assumes that Plaintiff's RICO claims arise solely from the misrepresentations discussed in this subsection.

Corp., 492 F.3d 1, 12 (1st Cir. 2007) ("[B]reach of contract itself [does not] constitute a scheme to defraud.").  "Only if a contractual promise is made with no intent ever to perform it can the promise itself constitute a fraudulent misrepresentation."  U.S. ex rel. O'Donnell v. Countrywide Home Loans, Inc., 822 F.3d 650, 662 (2d Cir. 2016); see also Perlman, 185 F.3d at 853 ("Sometimes the evidence shows outright lies and a plan not to keep one's promises—enough of them to meet [RICO's] continuity-plus-relationship formula for a 'pattern.'").

As discussed above, Plaintiff has not identified any promise in the Supply or Credit Agreements that AP LLC made with contemporaneous fraudulent intent.  Therefore, AP LLC's alleged failures to perform under the Supply Agreements cannot serve as predicate offenses under RICO.  In turn, any loss to Plaintiff as a result of AP LLC's breach of contract does not constitute an injury to "business or property" attributable to a RICO violation.

Second, Plaintiff alleges that Defendants' pattern of misrepresentations were part of a scheme to "ensure that [AP LLC] would not pay the full [Purchase Credit]" and to "dup[e] GSMS into staying in contract" with AP LLC for Products M and S.  Compl. ¶¶ 182, 187.  Again, however, while the Complaint particularly alleges three misrepresentations made by AP LLC (or Liu acting on behalf of AP LLC) at meetings held in November 2020 and March 2021, Plaintiff has failed to identify any actions it took in reliance on these misstatements or otherwise explain how the misrepresentations caused a loss of "money or property."[20]  See supra Section IV.B.2.a.[21]

---

[20] A civil RICO Plaintiff need not show that it relied on a misrepresentation to establish a predicate violation of mail or wire fraud but must always show loss causation. See Bridge, 553 U.S. at 647, 649.  For example, a plaintiff may establish causation through allegations that misrepresentations directed to and relied upon by a third-party resulted in its injury.  Id. at 649-50; see also id. at 658 ("In most cases, the plaintiff will not be able to establish even but-for causation if no one relied on the misrepresentation.") (emphasis added).

[21] It is also unclear how false statements made to Plaintiff could have caused Defendants to not reimburse the Purchase Credit.

The Complaint consequently fails to allege loss causation and fails to state a claim under RICO or NJRICO.  The Court dismisses Count VII without prejudice.

### c.      Civil Conspiracy (Count VIII)

Count VIII alleges a civil conspiracy arising from the same operative facts as Plaintiff's RICO claims, id. ¶¶ 192-96, and is deficient for substantially the same reason.

A claim for civil conspiracy under New Jersey common law has four elements: "(1) a combination of two or more persons; (2) a real agreement or confederation with a common design; (3) the existence of an unlawful purpose, or of a lawful purpose to be achieved by unlawful means; and (4) proof of special damages." Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C., 331 F.3d 406, 414 (3d Cir. 2003); see also Banco Popular N. Am. v. Gandi, 184 N.J. 161, 177 (2005).  Special damages flowing from the conspiracy must be pled with specificity.  Fed. R. Civ. P. 9(g).  The predicate "unlawful" purpose or means to support a civil conspiracy claim must constitute an independent tort claim, rather than a mere breach of contract.  Dist. 1199P Health & Welfare Plan v. Janssen, L.P., 784 F. Supp. 2d 508, 533 (D.N.J. 2011); see also Trico Equip., Inc. v. Manor, No. 08-5561, 2011 WL 705703, at *8 (D.N.J. Feb. 22, 2011) ("[T]here can be no action in civil conspiracy for breach of contract or unjust enrichment because neither claim sounds in tort." (citation omitted)).

Because the Court finds that each tort claim alleged in the Complaint fails to state a claim upon which relief may be granted, Plaintiff's civil conspiracy claim fails as well.  Moreover, for the same reasons discussed above in connection with Plaintiff's RICO claim, the Complaint fails to allege any damages flowing from the alleged conspiracy beyond those stemming from AP LLC's alleged breach of contract.  Plaintiff has thus failed to plead special damages with specificity.

20

The Court therefore dismisses Count VIII without prejudice.

### 3.      Remaining Tort Claims

The AP Defendants further argue that Plaintiff's remaining tort claims for conversion and tortious interference fail to state viable causes of action.  The Court again agrees.

### a.      Conversion (Count IX)

Count IX alleges that the AP Defendants wrongfully converted the Purchase Credit owed to Plaintiff under the Credit Agreements.  Compl. ¶¶ 207-09; Pl. Opp. at 28.  The Court concludes that Defendants' alleged misappropriation of a credit owed to Plaintiff cannot support a claim for conversion.

"Common law conversion consists of the following elements: (1) the existence of property, (2) the right to immediate possession thereof belonging to [the] plaintiff, and (3) the wrongful interference with that right by [the] defendant." Austar Int'l Ltd., 425 F. Supp. 3d at 357. "Property" for purposes of a conversion claim is limited to chattels or a specifically identifiable "pot of money" that belongs to the plaintiff.  Dougherty v. Drew Univ., 534 F. Supp. 3d 363, 380 (D.N.J. 2021).  By contrast, the conversion tort does not extend to "intangibles," Austar Int'l Ltd., 425 F. Supp. 3d at 357, or to "a debt, or a claim that one is owed money as the result of a breach of contract," Dougherty, 534 F. Supp. 3d at 380.

Here, the Purchase Credit is not a tangible chattel or an identifiable sum of money that could be converted.  Rather, the Credit Agreements simply provide that AP LLC will offset future invoices in installments until the credit is recouped.  Aloe Cert. Ex. B, at 1.  The Purchase Credit is therefore much more akin to an intangible "debt" than to an identifiable pool of funds belonging to Plaintiff.

21

As no additional facts could transform the Purchase Credit into "property" subject to a conversion claim, the Court dismisses Count IX with prejudice.

### b.     Tortious Interference with Contract (Count X)

Count X asserts that Liu, AP Research, and AP Labs tortiously interfered with the Supply Agreements by wrongfully "forcing [AP LLC] to not comply with its contractual obligations, by diverting . . . resources away from [AP LLC]'s obligations to fulfill the contracts, by making the required products . . . for other customers, and [by] soliciting bids for the products to GSMS's customers." Compl. ¶ 214.  The Court finds that Plaintiff has failed to plausibly allege that a third-party interfered with the Supply Agreements.

"To establish [tortious interference with an existing contract], a plaintiff must prove: (1) an existing contractual relationship; (2) intentional and malicious interference with that relationship; (3) loss or breach of a contract as a result of the interference; and (4) damages resulting from that interference." Fid. Eatontown, LLC v. Excellency Enter., LLC, No. 16-3899, 2017 WL 2691417, at *6 (D.N.J. June 22, 2017).  A tortious interference claim "cannot be directed at a person or entity that is a party to the contract." Ross v. Celtron Int'l, Inc., 494 F. Supp. 2d 288, 305 (D.N.J. 2007) (citing Emerson Radio Corp. v. Orion Sales, Inc., 253 F.3d 159, 173 (3d Cir. 2001)).  Furthermore, "[a]n employee working for the corporation with which the plaintiff allegedly had a contract cannot serve as the third-party necessary for the tripartite relationship, unless the employee acted outside the scope of his employment." Id. (citations omitted).

Here, the Complaint fails to allege that any AP Defendant interfered with the contracts between Plaintiff and AP LLC as a third party.  All conduct attributed to Liu in the Complaint was allegedly performed in his capacity as "representative" of AP LLC. See, e.g., Compl. ¶¶ 105, 107, 108, 113, 114, 117.  Moreover, the Complaint attributes no specific conduct whatsoever to AP

Research or AP Labs, beyond the fact that these entities were owned by Liu.   Id. ¶ 124.
Consequently, Plaintiff has failed to allege a claim for tortious interference against any AP
Defendant, and the Court dismisses Count X without prejudice.

     **C.**    **Motion to Strike**

     The AP Defendants last ask the Court to strike from the Complaint all allegations
concerning the AIL v. AP Action, a now-settled corporate-governance related suit brought by AIL
against AP LLC, Liu, and Bostal.  The Court grants the motion to strike to the extent Plaintiff
alleges irrelevant details concerning the AIL v. AP Action, but will permit Plaintiff to reference
the existence of the litigation.

     A party moving to strike allegations pursuant to Rule 12(f) must demonstrate that the
allegations (1) "have no possible relation to the controversy"; and (2) may cause prejudice to the
moving party or confuse the issues in the case.  Burke, 983 F. Supp. 2d at 484.  Plaintiff argues
that the AIL v. AP Action is relevant to its claims because it shows Defendants' "motive" for
breaching the Supply Agreements and diverting funds away from Plaintiff.  Pl. Opp. at 30.
Specifically, Plaintiff's theory is that AP LLC and Liu needed additional money to fund their
litigation against and ultimate settlement with AIL.  See Compl. ¶¶ 116-23.

     Despite this tenuous connection between the AIL v. AP Action and the instant suit, the
Complaint dedicates 14 pages and over 50 paragraphs to discussing the allegations in AIL's
complaint against AP LLC and Liu with excruciating detail, all without providing any explanation
as to how those allegations relate to Plaintiff's claims.[22]  See Compl. ¶¶ 28-78.  Plaintiff also seeks
to incorporate legal conclusions set forth in AIL's complaint, including that Liu "inten[ded] to

---

[22] As just one example, Plaintiff's Complaint spends 3 pages and 13 paragraphs discussing specific terms of the
Operating Agreement governing AP LLC that bear no apparent relationship to this dispute.  Compl. ¶¶ 38-50.

wrongfully benefit from the good will and reputation of [AP LLC]," "breached the duty of loyalty he owed to [AP LLC]," and "engag[ed] in a steady campaign of self-dealing and diversion of corporate opportunities to himself."  See, e.g., id. ¶¶ 54, 68.

Even considering the movant's high burden on a motion to strike, the Court is satisfied that Plaintiff's detailed description of the AIL v. AP Action is immaterial to Plaintiff's claims, prejudicial to the AP Defendants, and likely to confuse the issues in this case.  Accepting Plaintiff's theory that the existence of the prior litigation is generally relevant to show "motive," Plaintiff has not proffered any basis to incorporate the specific allegations asserted by AIL into its own Complaint.  The Court will therefore exercise its discretion to strike paragraphs 28 through 78 and 115 of the Complaint pursuant to Rule 12(f).  The AP Defendants' motion to strike is otherwise denied.

## V.    CONCLUSION

For the reasons stated above, the AP Defendants' Motion to Dismiss and Strike, ECF No. 29, is **GRANTED in part** and **DENIED in part**.  Counts II-VIII and X-XI of the Complaint are **DISMISSED WITHOUT PREJUDICE** as to the AP Defendants.  Count IX of the Complaint is **DISMISSED WITH PREJUDICE** as to the AP Defendants.  Paragraphs 28-78 and 115 of the Complaint are **STRICKEN** pursuant to Rule 12(f).

To the extent Plaintiff can cure the deficiencies identified in this Opinion, it may file an amended pleading within thirty (30) days.  Any amended pleading asserting claims against Liu, AP Research, or AP Labs must be properly served upon those Defendants pursuant to Rule 4.

An appropriate order follows.

Date: June 30, 2022                         **/s/ *Madeline Cox Arleo***
                                            **Hon. Madeline Cox Arleo**
                                            **UNITED STATES DISTRICT JUDGE**